BRYANT, Judge.
Where defendant failed to establish prejudice from the trial court's ruling to allow the jury to view exhibits outside of the courtroom absent the consent of the parties, we find no prejudicial error. Where evidence in the record supports the trial court's finding that defendant was due one point in the calculation of her prior record level for a judgment entered against defendant on the charge of misdemeanor larceny, we find no error in the trial court's calculation of eighteen points for defendant's prior record level.
On 7 October 2013, a Buncombe County grand jury indicted defendant Ladonna Emoni Lester on first-degree burglary, assault inflicting physical injury by strangulation, assault with a deadly weapon, and attaining habitual felon status. On 3 March 2014, a grand jury indicted defendant on the charges of common law robbery and attaining habitual felon status. A trial on the charges was commenced on 1 June 2013 in Buncombe County Superior Court, the Honorable Gary M. Gavenus, Judge presiding.
The evidence at trial tended to show that James Byrd-sixty-three years old at the time of trial-lived in a one-bedroom apartment located at 121 Bartlett Street, in Asheville. He had befriended defendant. And, when she had no place to live, he allowed her to sleep in his apartment for few nights. On 18 May 2013, Mary Norris, a friend of Byrd's, came to the apartment. Byrd testified that after two and a half hours, he, Norris, and defendant had consumed a fifth of scotch "and started hitting on the gin." At some point, Byrd asked Norris to take him to a friend's house and asked defendant to leave the apartment while he was away. Defendant refused, and Byrd asked an apartment security guard to escort defendant off the property. After the confrontation, Byrd did not leave. At midnight, he heard noise coming from his bathroom and discovered defendant climbing through a window.
I didn't pay her any attention, you know, because I'd been drinking. I said big as she is, she can't get, she can't get through this window. So I just closed the bathroom door and let her run her mouth and do whatever she wanted to do.
...
Then the next thing I know, she was in the house....
Byrd testified that defendant picked up a bottle, hit him on the head, sat on him, and began to strangle him. Defendant retrieved a knife from Byrd's kitchen and demanded his money and ATM card. After defendant left, Byrd called the Asheville Police Department.
Patrol Officer Joshua Kingry with the Asheville Police Department arrived on the scene at 1:00 a.m. Outside of Byrd's apartment, Officer Kingry observed that the screen was off of one of the windows and a chair had been pushed under the window. Inside the apartment, in the bathroom, "[i]tems had been knocked down and it appeared that someone had come through the window." Officer Kingry observed "two rather large knots on [Byrd's] head. One was split open. He had scratches and redness around his throat. He had in the whites of his eyes, they were like veins had popped in his eyes. He had a couple other small scratches on his torso and arms." Officer Kingry obtained a copy of the apartment complex surveillance video from around the time of the assault. The video recorded images of defendant leaving the apartment complex shortly before Officer Kingry arrived.
The jury returned guilty verdicts against defendant on the charges of first-degree burglary, assault by strangulation, assault with a deadly weapon, and common law robbery. Defendant pled guilty to attaining habitual felon status. In accordance with the jury verdicts, the trial court entered judgment on the charge of first-degree burglary, sentencing defendant as an habitual felon for a term of 146 to 188 months. In a second judgment, the trial court consolidated defendant's convictions for common law robbery, assault by strangulation, and assault with a deadly weapon, sentencing defendant to a term of 146 to 188 months, to be served consecutively. Defendant appeals.
_________________________
On appeal, defendant raises the following issues: whether the trial court erred (I) by allowing six exhibits to be delivered to the jury deliberation room; and (II) in calculating defendant's prior record level.
Petition for writ of certiorari
We note that defendant filed a petition for writ of certiorari with this Court to seek review of the trial court's judgment sentencing defendant as a habitual felon, as that status may be impacted by a review of the substantive offenses for which defendant was convicted and from which defendant appeals. As defendant's sentence, including her habitual felon sentencing status, will be reviewed, if necessary, as a part of her original appeal, defendant's petition for writ of certiorari is unnecessary, and therefore, denied. See State v. Sullivan,110 N.C.App. 779, 780-81, 431 S.E.2d 502, 503 (1993) ("It is well settled that in order to support a[n] habitual felon conviction and sentence, there must be an ancillary felony prosecution to which the habitual felon proceeding could attach." (citing State v. Allen,292 N.C. 431, 233 S.E.2d 585 (1977) )).
I
Defendant argues that the trial court erred by allowing six exhibits to be delivered to the jury room during deliberations without obtaining the consent of the parties. Specifically, defendant contends that the trial court violated North Carolina General Statutes, section 15A-1233(b), and she is, therefore, entitled to a new trial. We disagree.
As a general rule, defendant's failure to object to alleged errors by the trial court operates to preclude raising the error on appeal. See[ ] N.C. R.App. P. 10(a)....
...
[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial.
State v. Ashe,314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (citations omitted); see also State v. Johnson,164 N.C.App. 1, 19-20, 595 S.E.2d 176, 187 (2004) (holding the defendant's assigned error was automatically preserved for appeal where the trial court failed to exercise its discretion when it informed the jury that it was their duty to remember the evidence, "[and] we don't have anything that can bring it back there to you").
Here, defendant argues that the trial court violated the General Statutes, section 15A-1233, which states that "[u]pon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence."N.C. Gen.Stat. § 15A-1233(b) (2013).
For purposes of N.C.G.S. § 15A-1233(b), a trial court lacks the "consent of all parties" when a party has objected to the requested evidence being taken back into the jury room for deliberation. See State v. Mason,222 N.C.App. 223, 232, 730 S.E.2d 795, 801-802 (2012) (holding that the defendant did not consent to the requested exhibits going back to the jury room because defense counsel objected). On the other hand, the absenceof a formal objection to a jury's request to bring evidence back into the jury room constitutes consent by implication. State v. Rogers,52 N.C.App. 676, 688, 279 S.E.2d 881, 889 (1981) ; see also State v. Byrd,50 N.C.App. 736, 743, 275 S.E.2d 522, 527 (1981) ("While we believe that the better practice should be for the trial judge to determine whether or not the parties consent before allowing the jury request, we nevertheless hold that having failed to enter an objection or otherwise indicate his lack of consent, the defendant waived his right to object.").
Here, during the jury's deliberation, the trial court received a request from the jury.
The Court: Ladies and gentlemen, I have received a request to review the evidence. You indicated you wanted to review the video or view the video and you wanted to see the statement from Mr. Byrd, you wanted to see the bottle, and you wanted to see the photographs.
I can tell you that I will allow that to occur....
...
The Court: All right. Anything on behalf of either party?
[Prosecutor:] No, sir.
[Defense Counsel:] (Shakes head from side to side.)
The video admitted as State's Exhibit 10 was then played in its entirety in the courtroom.
The Court: ... As to your additional requests, as to the statement from Mr. Byrd, which would be State's Exhibit NUMBER 2, and the bottle, which is a portion of State's Exhibit NUMBER 9, and the photographs, which would be State's Exhibits 3, 4, 5, 6, and 7, I'm going to allow you to take those exhibits. They'll be delivered to you by the bailiff back to the jury room with you.
In Mason,222 N.C.App. 223, 730 S.E.2d 795, this Court found error where the trial court sent exhibits to the jury room, over defendant's objection.Here, defendant made no objection. Defendant's lack of objection when presented with a distinct opportunity to speak amounted to consent to the court's authorization to provide the jury with the requested evidentiary exhibits during their deliberation. Thus, the trial court did not act contrary to the statutory mandate in permitting the jury to review the evidence and take it into the jury room. As in Byrd,we believe a better practice would be for the trial court-prior to announcing that a jury request for exhibits would be permitted-to obtain the affirmative consent of counsel before addressing the jury. Byrd,50 N.C.App. at 743, 275 S.E.2d at 527. However, where, as here, consent by implication is obtained when counsel was given the opportunity to consent or object and made no objection before the exhibits were shown and taken to the jury room, the trial court's action, while not precisely in accord with the statute, was also not expressly contrary to the statutory mandate. Further, assuming arguendo that the trial court did act contrary to the statute and, therefore, committed error, defendant has shown no prejudice. SeeN.C. Gen.Stat. § 15A-1443(a) (2013) ("A defendant is prejudiced by errors ... when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant."). Accordingly, defendant's argument is overruled.
II
Next, defendant argues that the trial court erred in sentencing her as an habitual felon with a prior record level VI. Defendant contends the State failed to establish defendant had eighteen or more prior record level points. Specifically, defendant contends that the prior record level worksheet used to calculate her prior record level includes a misdemeanor conviction for larceny entered on 1 May 2009 in Buncombe County under file number 08 CR 18777, but that the State failed to meet its burden of proof in establishing the conviction. We disagree.
"It is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of a defendant's prior record level to be preserved for appellate review." State v. Bohler,198 N.C.App. 631, 633, 681 S.E.2d 801, 804 (2009) (citations omitted). "The determination of an offender's prior record level is a conclusion of law that is subject to de novoreview on appeal." Id.
"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions...." N.C. Gen.Stat. § 15A-1340.14(a) (2013). For felony sentencing purposes, a prior record level VI, requires at least 18 points. Id.§ 15A-1340.14(c)(6). For a Class A1 and Class 1 non-traffic misdemeanor offense, 1 point is assigned. Id.§ 15A-1340.14(b)(5). For a prior felony Class H or I conviction, 2 points are assigned. Id.§ 15A-1340.14(b)(4).
Defendant's prior record level was calculated to be 18 points,[1] including 1 point for the misdemeanor larceny offense. On appeal, defendant only challenges the sufficiency of the record to support the addition of 1 point for a misdemeanor conviction. Therefore, we determine whether the competent evidence in the record supports the trial court's conclusion that defendant acquired one point for a misdemeanor conviction for larceny entered on 1 May 2009 in Buncombe County under file number 08 CR 18777-for a total of 18 prior record level points-and whether defendant should be sentenced as a prior record level VI. See Bohler,198 N.C.App. at 633, 681 S.E.2d at 804.
The record on appeal indicates that during the sentencing hearing, defendant did not stipulate to the prior convictions as listed on the prior record level worksheet provided by the prosecutor. The prosecutor stated that she had previously handed up the judgments supporting the prior record level.
THE COURT: Everything on there that's been checked, I've found in that report that you gave me.
...
The ones that are not checked I could not find ... those convictions you allege.
...
[Prosecutor]: ... It may take me a little bit of time to do that in the clerk's office....
...
If I may step out. I'll be as fast as I can. Thank you.
After a pause in the proceedings, the prosecutor stated the following:
[Prosecutor]: ... I do have certified copies from the clerk of the judgments or the screen shots of the cases of the ones that were not on the NCIC, and [defense counsel] has reviewed those. If I may approach with those, Your Honor please?
THE COURT: Yes.
In the record on appeal, the prior record level worksheet reflects a check mark consistent with the trial court's acknowledgment of having received evidence of a judgment against defendant for the larceny conviction entered on 1 May 2009 under file number 08 CR 18777. Furthermore, pursuant to Rule of Appellate Procedure 9(b)(5), the State has filed a supplement to the Record on Appeal which includes a certified true copy of a report from the Buncombe County Clerk's Office reflecting a conviction for the misdemeanor offense of larceny entered on 1 May 2009 under file number 08CR 18777 against defendant. N.C. R.App. P. 9(b)(5)(a) (2015) ("If the record on appeal as settled is insufficient to respond to the issues presented in an appellant's brief or the issues presented in an appellee's brief pursuant to Rule 10(c), the responding party may supplement the record on appeal with any items that could otherwise have been included pursuant to this Rule 9."). We note that neither appellate counsel for the State nor appellate counsel for defendant appeared before the trial court. Nevertheless, in accordance with the trial court's statement that it marked each prior conviction for which proof of judgment had been submitted, the record contains proof of judgment of defendant's conviction for misdemeanor larceny entered on 1 May 2009 under file number 08 CR 18777. Therefore, the record supports the trial court's conclusion that defendant had 1 prior record level point for a conviction for misdemeanor larceny, yielding 18 total prior record level points. Accordingly, defendant's argument is overruled.
NO ERROR.
Judges DAVIS and INMAN concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 10 June 2014 by Judge Gary M. Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 5 May 2015.

 Prior offenses Offense class Number of Convictions Record level points assigned Larceny Class 1 Misdemeanor 5 5 Failure to appear I Felony 1 2 Sell/delivery of Sch. II controlled substance H Felony 2 4 Maintaining a place for the purpose of keeping or selling a controlled substance I Felony 1 2 Possession of drug paraphernalia Class 1 Misdemeanor 3 3 Breaking or entering Class 1 Misdemeanor 1 1 Where the elements of the current offense were committed while defendant was on probation 1 Total: 18